UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | DOCKET NO. 3:13-cr-00204-MOC |
| | ) | |
| *Plaintiff,* | ) | CRIMINAL NO. 405-59 |
| | ) | |
| v. | ) | **DEFENDANTS' JOINT MOTION** |
| | ) | **FOR LIMITED DISCLOSURE OR** |
| BOGGS PAVING, INC., *et al.*, | ) | ***IN CAMERA* REVIEW OF GRAND** |
| | ) | **JURY TRANSCRIPTS** |
| *Defendants.* | ) | |
| _____ | ) | |

The Defendants Boggs Paving Inc., Carl Andrew Boggs III, Greg Miller, Styx Cuthbertson Trucking Company, and John Cuthbertson, through undersigned counsel, respectfully move this Court, pursuant to the Due Process and Grand Jury Clauses of the Fifth Amendment and Federal Rules of Criminal Procedure 6(e)(3)(E)(i)-(ii) and 12(b), for disclosure to defense counsel, or to the Court *in camera,* those portions of the grand jury transcripts containing any (1) legal instructions; (2) statements by the prosecutors to the grand jury; and (3) witness testimony concerning the government's defective legal theory that Defendant Boggs Paving defrauded other general contractors and/or Disadvantaged Business Enterprises other than the one hired by Boggs Paving (Defendant Styx Cuthbertson and his trucking company) of the "profits" that these other contractors and DBEs might have obtained if Boggs Paving had not (allegedly) defrauded the United States Department of Transportation, the North Carolina Department of Transportation, and the South Carolina Department of Transportation of their (alleged) right to "control ... how their money should be spent." *See* Sup. Ind., p. 2, ¶ 3.

The Court should also either disclose or review *in camera* the grand jury transcripts to determine whether the grand jurors were properly instructed that in order to return the mail and wire

fraud charges (Counts 1-20), at least 12 grand jurors – the minimum required to indict under Rule 6(f) of the Federal Rules of Criminal Procedure – had to unanimously agree on one or more of the five alternative theories of prosecution authorized by the Superseding Indictment.[1/] If no such instruction was given, the Defendants request that the Court either disclose or review the grand jury transcripts *in camera* to determine whether there is any reasonable possibility that the grand jury relied on one of the defective theories described in the accompanying joint motion to dismiss. Finally, the Defendants request that, following the release or *in camera* review of the grand jury transcripts and any supplemental briefing by the parties with respect to the matters disclosed therein, the Court dismiss Counts 1-29 of the Superseding Indictment on the ground that the Superseding Indictment was procured in violation of the Fifth Amendment right to indictment by an independent and informed grand jury.

In support of these requests, the Defendants state the following:

1. As described in detail in the accompanying motion to dismiss, the mail and wire fraud charges in Counts 1-20 are based on the allegation that the Defendants intended to defraud at least three completely different categories of "victims" and types of alleged "property."

*First*, the Superseding Indictment alleges that Boggs Paving defrauded the USDOT, NCDOT and SCDOT of their (alleged) right to "control ... how their money should be spent." *See* Sup. Ind., p. 2, ¶ 3.

*Second*, the Superseding Indictment alleges that Boggs Paving defrauded other general contractors and DBEs other than the one hired by Boggs Paving (Defendant Styx Cuthbertson and

---

[1/] Under Rule 6(a)(1), a grand jury may consist of between 16 and 23 members but under Rule 6(f) "may indict only if at least 12 jurors concur."

-2-

his company, Styx Cuthbertson Trucking) of the "profits" these other contractors and DBEs might have obtained if Boggs Paving had not (allegedly) tricked the USDOT, NCDOT and SCDOT into awarding the construction contracts to it.

*Third*, Count One adds an additional theory that the Defendants conspired under 18 U.S.C. § 371 to defraud the United States by impeding, impairing, obstructing and defeating the lawful governmental function of the USDOT in implementing DBE programs in North and South Carolina.

2.  The Defendants' joint motion to dismiss demonstrates that substantial "ground[s] may exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed. R. Crim P. 6(e)(3)(E)(ii). In particular, the motion establishes that the government's three fraud theories are defective, as a matter of law. If the Court agrees that all three theories are defective, then Counts 1-29 would be dismissed and the instant motion would become moot. However, if the Court were to agree that only *one* or *two* of the three theories are defective, then the Court would have to determine whether the grand jury was properly instructed and necessarily indicted on the basis of at least 12 members of the grand jury agreeing on the legitimate theory or theories.

If, as the Defendants suspect, the government did *not* instruct the grand jury that at least 12 members had to agree upon the *same* theory or theories in order to return an indictment, then the Court would have to presume that the grand jury relied upon one (or more) of the improper theories. *See generally Yates v. United States*, 354 U.S. 298 (1957); *Stromberg v. California*, 283 U.S. 359 (1931); *United States v. Jefferson*, 674 F.3d 322, 361 (4th Cir. 2012). And, to overcome this presumption, the Court would have to review the transcripts to determine whether there was any reasonable possibility that the grand jury's deliberative process was tainted by the improper theories.

-3-

Therefore, depending upon the conclusions reached by the Court on the Defendants' joint motion to dismiss, the Court should either disclose the relevant portions of the grand jury transcripts to the Defendants, or the Court should examine the transcripts *in camera* to determine whether the grand jury was properly instructed and, if not, whether such failure was harmless beyond a reasonable doubt.

3. Further grounds in support of this motion are set forth in the following Memorandum of Law.

## MEMORANDUM

**I. THE FIFTH AMENDMENT REQUIRES THAT AN INDICTMENT BE RETURNED BY AN INDEPENDENT AND INFORMED GRAND JURY**

The Grand Jury Clause of the Fifth Amendment provides that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." U.S. Const. Amend. V. The grand jury provides two important functions in the criminal justice system. It determines "whether there is probable cause to believe a crime has been committed," and, more importantly, protects citizens against "unfounded criminal prosecutions." *United States v. Calandra*, 414 U.S. 338, 343 (1974). The grand jury's role of protecting against unjust prosecution is a critical one:

> [the grand jury] has been regarded as a primary security to the innocent against hasty, malicious and oppressive persecution; it serves the invaluable function in our society of standing between the accuser and the accused . . . to determine whether a charge is founded upon reason or was dictated by an intimidating power or by malice and personal ill will.

*Wood v. Georgia*, 370 U.S. 375, 390 (1962). *See also United States v. Kaley*, 134 S.Ct. 1090, 1098 (2014) (noting the grand jury's "'historic role of protecting individuals from unjust prosecution'")

(citation omitted); *United States v. Williams*, 504 U.S. 36, 47 (1992) (function of grand jury is to "serv[e] as a buffer or referee between the Government and the people"); *Branzburg v. Hayes*, 408 U.S. 665, 686-87 (1972) (noting "ancient role" of grand jury in both determining if there is probable cause to believe crime has been committed and in protecting citizens against unjust prosecution). The Supreme Court has made clear that, to fulfill its constitutional role, the grand jury must be an investigating body, "acting independently of either prosecuting attorney or judge." *Williams*, 504 U.S. at 49 (emphasis and quotations omitted); *see also Stirone v. United States*, 361 U.S. 212, 218-19 (1960) ("[T]he right to have the grand jury make the charge on its own judgment is a substantial right which cannot be taken away....").

Preservation of the grand jury's independence and the subsequent check that such independence provides against unjust prosecutions also demands that prosecutors not be allowed to engage in conduct "that impinges on the grand jury's autonomy and interferes with its exercise of unbiased judgment." *United States v. DeRosa*, 783 F.2d 1401, 1404 (9th Cir. 1986); *see also United States v. Breslin*, 916 F. Supp. 438, 443 (E.D. Pa. 1996) ("The grand jury does not belong to the prosecutor . . ."). Thus, the Fifth Amendment forbids the prosecution from misleading a grand jury regarding the facts *or the law*, or otherwise depriving the grand jury of its ability to make an independent probable-cause determination.[2/]

---

[2/] In addition, the prosecutor has the obligation to educate the grand jury as to the quality of the evidence presented - particularly when the evidence presented is in the form of transcripts from a prior grand jury:

> More particularly, the government prosecutor, in presenting hearsay evidence to the grand jury, must not deceive the jurors as to the quality of the testimony they hear. Heavy reliance on secondary evidence is disfavored precisely because it is not first-rate proof . . . Such secondary evidence added a false aura of factual support to the government's case and may well have deceived the grand jurors.

*United States v. Hogan*, 712 F.2d 757, 761 (2d Cir. 1983) (reversing conviction and remanding for dismissal) (citations omitted). Similarly, the use of a limited number of summary witnesses is disfavored, as it produces "evidence which (continued...)

-5-

## II. DISMISSAL OF AN INDICTMENT IS THE APPROPRIATE REMEDY FOR PROSECUTORIAL ABUSE OF THE GRAND JURY

Because the independent functioning of the grand jury is so critical to our criminal justice system, dismissal of an indictment is both a necessary and appropriate remedy when prosecutorial error has compromised a defendant's right to an independent and informed grand jury:

> The prosecutor's abuse of his special relationship to the grand jury poses an enormous risk to defendants . . . For while in theory a trial provides the defendant with a full opportunity to contest and disprove the charges against him, in practice, the handing up of an indictment will often have a devastating personal and professional impact that a later dismissal or acquittal can never undo. Where the potential for abuse is so great, and the consequences of a mistaken indictment so serious, the ethical responsibilities of the prosecutor, and the obligation of the judiciary to protect against even the appearance of unfairness, are correspondingly heightened.
>
> We suspect that dismissal of an indictment may be virtually the only effective way to encourage compliance with these ethical standards, and to protect defendants from abuse of the grand jury process.

*United States v. Serubo*, 604 F.2d 807, 817 (3d Cir. 1979). Similarly, the Supreme Court has observed that when "the structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair," prejudice to the defendant may be presumed, and any resulting indictment should be dismissed. *Bank of Nova Scotia v. United States*, 487 U.S. 250, 257 (1988) (citing *Rose v. Clark*, 478 U.S. 570, 577-78 (1987)). Accordingly, the federal courts have enforced the Grand Jury Clause of the Fifth Amendment by dismissing indictments obtained through prosecutorial error that violates the independence of the grand jury or its ability to deliberate freely before voting on whether to return an indictment.

---

[2]/(...continued)
appears smooth, well integrated and consistent, making even weak cases appear strong." *United States v. Brito*, 907 F.2d 392, 395 (2d Cir. 1990) (ultimately concluding that the grand jury was not misled, but only *after* reviewing the grand jury transcripts) (internal quotations omitted).

-6-

For example, in *Breslin*, the court dismissed an indictment where the prosecutor had engaged in behavior that undermined the grand jury's independence. *Breslin*, 916 F. Supp. at 442-46. There, the court ordered the prosecutor to provide transcripts from the grand jury proceeding for *in camera* review after the defendants alleged prosecutorial misconduct. *Id.* The review of the transcripts, and the oral argument that followed, revealed that the prosecutor had, *inter alia*: (1) suggested to the grand jury that "his assigned time was short" and otherwise pressured the grand jury by stating that the statute of limitations was about to run on some of the charges; (2) improperly characterized evidence and improperly charged the grand jury regarding what was to be included in the indictment; and (3) wrongly led the grand jury to believe that they did not have the right to hear any testimony from live witnesses. *Id*.

The *Breslin* court concluded that the "cumulative effect of the many instances of misconduct can fairly be said to have 'substantially influenced the grand jury's decision to indict." *Id*. at 446 (quoting *Bank of Nova Scotia*, 487 U.S. at 255-56). The court held that, "by making timeliness such an issue, the government may have chilled the grand jury's questioning of the prosecutor and of witnesses - a concern that is exacerbated when almost all of the testimony was read from transcripts of prior grand jury proceedings." *Breslin*, 916 F. Supp. at 443. As a result, the court dismissed the indictment to ensure that the "Fifth Amendment's guarantee of indictment by grand jury continues to have . . . modern meaning." *Id*. at 447. *See also United States v. Stevens*, 771 F. Supp.2d 556, 565 (D. Md. 2011) (dismissing white collar criminal indictment because government failed to properly instruct grand jury regarding advice of counsel defense); *United States v. Peralta*, 763 F. Supp. 14, 19-21 (S.D.N.Y. 1991) (dismissing indictment because government improperly instructed grand jury regarding legal concept of constructive possession); *United States v. D'Alessio*, 822 F.

-7-

Supp. 1134 (D. N.J. 1993) (dismissing indictment because grand jury was misinformed regarding applicable law); *United States v. Roberts*, 481 F. Supp. 1385 (C.D. Cal. 1980) (dismissing indictment because of cumulative effect of prosecutor's improper and misleading comments); *United States v. Provenzano*, 440 F. Supp. 561, 565 (S.D.N.Y. 1977) (dismissing superseding indictment because prosecution misled grand jurors regarding reliability of witness' testimony).

Although the Supreme Court has held that there are limits upon a court's ability to exercise its general *supervisory* power to dismiss an indictment in cases where improprieties in grand jury proceedings do not rise to the level of a Fifth Amendment violation, these limitations have no application in cases involving constitutional challenges to the validity of an indictment. *See, e.g.*, *Williams*, 504 U.S. at 45-47; *Bank of Nova Scotia*, 487 U.S. at 250.[3/] Accordingly, if the independence of a grand jury has been compromised by a prosecutor's conduct, a court can – and, indeed, must – enforce the Fifth Amendment by dismissing the indictment.

### III. THE COURT SHOULD EITHER REVIEW *IN CAMERA* OR ORDER DISCLOSURE OF THE GRAND JURY INSTRUCTIONS

The Court may order disclosure of a transcript of the grand jury proceedings upon a showing that "a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury" or, alternatively, "preliminarily to or in connection with a judicial proceeding." Fed. R. Crim. P. 6(e)(3)(E)(ii); *id.* 6(e)(3)(E)(I). Under a variety of circumstances, courts have found it appropriate to review grand jury transcripts to determine the propriety of the government's conduct.

For example, in *United States v. McKenzie*, 678 F.2d 629 (5th Cir. 1982), a Grand Jury asked the prosecutor for the significance of a 10 - 10 tie in any vote to indict. The prosecutor implied that

---

[3/] In *Bank of Nova Scotia*, for example, the Court expressly noted that "no constitutional error occurred during the grand jury proceedings," and that its holding addressed only the supervisory power of the courts. 487 U.S. at 255-58.

-8-

Case 3:13-cr-00204-MOC   Document 102   Filed 07/14/14   Page 8 of 16

he did not know the answer, despite the fact that he had earlier informed the grand jury that any vote of less than twelve would result in a "no true bill." 678 F.2d at 633. The Fifth Circuit examined the grand jury transcripts and ruled that the prosecutor's answer was not only "error" but "highly objectionable." *Id.* at 633.[4] *See also United States v. Jefferson*, 546 F.3d 300 (4th Cir. 2008), *cert. denied*, 556 U.S. 1236 (2009) (declining to dismiss indictment for alleged violation of Speech and Debate Clause after thorough review of grand jury transcripts); *United States v. Sousley*, 453 F. Supp. 754, 758 n. 1 (W.D. Mo. 1978) (in reversing conviction on double jeopardy grounds, the court criticized the prosecutor for inaccurately answering a question by the grand jury and recognized that "United States grand juries, persons subject to potential indictment, and the proper administration of criminal justice ... require that Assistant United States Attorneys conduct sufficient legal research to be in a position to give accurate answers to questions they may be asked by members of a grand jury").

Courts have also recognized that while instructions by a prosecutor to a grand jury technically fall within the ambit of grand jury secrecy, none of the factors weighing in favor of continued secrecy as articulated in *Douglas Oil*, 441 U.S. at 219 n. 10, are applicable.[5] A prosecutor's "legal

---

[4] The Fifth Circuit ultimately did not reverse the conviction because its examination of the full grand jury transcript revealed that the grand jury continued to deliberate, eliminate counts and otherwise demonstrate its independence.

[5] The Supreme Court has articulated the following as justifications for grand jury secrecy:

> (1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses who may testify before [the] grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt.

*Douglas Oil*, 441 U.S. at 219 n.10 (alteration in original) (citation omitted).

instructions to the grand jury [do] not involve a summation or marshaling of the evidence, and [do] not identify any of the witnesses or grand jurors." *Gonzalez v. County of Suffolk*, No. CV 09-1023 (TCP) (GRB), 2014 U.S. Dist. LEXIS 58775, at *28 (E.D.N.Y. April 23, 2014) (ordering disclosure of prosecutor's instructions to the grand jury and the testimony of one witness after first reviewing them *in camera*). *See also Anilao v. Spota*, 918 F. Supp. 2d 157, 164 (E.D.N.Y. 2013) (ordering disclosure of grand jury transcripts following *in camera* review, noting that the "policy considerations underlying grand jury secrecy" were "extremely weak" as there was no ongoing law enforcement investigation); *United States v. Soliman*, No. 06-236, 2008 U.S. Dist. LEXIS 76358 (W.D.N.Y. Sept. 30, 2008) (disclosing grand jury instructions where defendant alleged grounds supporting his argument that grand jury was misled by incorrect instruction of law). Erroneous and prejudicial legal instruction to a grand jury is also a well-established ground on which to dismiss or partially dismiss a criminal indictment. *See, e.g., Stevens*, 771 F. Supp.2d at 565; *Peralta*, 763 F. Supp. at 19-21; *D'Alessio*, 822 F. Supp. at 1145.

As demonstrated in the Defendants' Joint Motion to Dismiss, there are ample grounds to believe that the government presented at least one legally defective theory of "property" to the indicting grand jury. Indeed, the government's theory that other general contractors and/or other DBEs were defrauded of a property right when Boggs Paving won the various construction contracts is utterly baseless and contrary to all governing jurisprudence. *See, e.g., Biser v. Town of Bel Air*, 991 F.2d 100 (4th Cir.), *cert. denied,* 510 U.S. 864 (1993); *Sowell's Meats & Servs., Inc. v. McSwain*, 788 F.2d 226, 228 (4th Cir. 1986); *Ricker v. Edmisten,* No. 93-1756, 1994 U.S. App. LEXIS 2022, at **5-6 (4th Cir. Feb. 7, 1994) (unpublished); *KM Enterprises, Inc. v. McDonald*, No. 11-cv-5098 (ADS)(ETB), 2012 U.S. Dist. LEXIS 138599, at **6, 35-54 (E.D.N.Y. Sept. 25, 2012), *aff'd*, 518

-10-

Fed. Appx. 12 (2d Cir. 2013) (unpublished); *Lanier Construction Co., Inc. v. City of Clinton*, 812 F. Supp. 2d 696, 700 (E.D.N.C. 2011); *ROK Brothers, Inc. v. Baltimore Co.*, No. WMN-09-3423, 2010 U.S. Dist. LEXIS 37439, at **6-11 (D. Md. April 15, 2010); *City-Wide Asphalt Paving, Inc. v. Alamance County,* 966 F. Supp. 2d 395, 400-01 (M.D.N.C. 1997).

Equally without merit is the government's theory that the Defendants defrauded the USDOT by allegedly making false statements to SCDOT and NCDOT. *See United States v. Blankenship*, 382 F.3d 1110, 1136-38 (11th Cir. 2004), *cert. denied sub nom. Glover v. United States*, 546 U.S. 828 (2005).

Hence, the Defendants have made a *prima facie* showing that grounds may exist to dismiss the Superseding Indictment for failure to state offenses. And, even if the Court believes that the government's alternative theory – that Boggs Paving deprived USDOT, NCDOT and SCDOT of their alleged "right to control" the beneficiary of the construction contracts – properly states an offense, the other defective theories would have tainted the entire process unless (1) the grand jurors were instructed that at least 12 members had to unanimously agree on each theory of prosecution and (2) a review of the grand jury transcripts conclusively shows that the grand jury could only have indicted on the "right to control" theory.

**IV.  THE REQUESTED DISCLOSURES ARE NARROWLY TAILORED TO ADDRESS ONLY THE PARTICULARIZED NEED**

Since the Defendants have shown a particularized need for access to and/or *in camera* review of the grand jury transcripts, the Court "must weigh the competing interests and order so much disclosure as needed for the ends of justice." *United States v. McDowell*, 888 F.2d 285, 289 (3d Cir. 1989) (*quoting In re Grand Jury Matter (Catania)*, 682 F.2d 61, 62 (3d Cir. 1982)). The Court should also determine whether the Defendant's request for grand jury material is "structured to cover

-11-

only material so needed." *Douglas Oil Co. v. Petrol Stops N.W.*, 441 U.S. 211, 222 (1979); *United States v. Mahoney*, 495 F. Supp. 1270, 1273 (E.D. Pa. 1980) ("[T]he request for disclosure should be narrowly tailored to the asserted need for disclosure.") (citation omitted).

The Defendants' requests are "structured to cover only material so needed," because they request – at least as a preliminary matter – only a review (by defense counsel or the Court *in camera*) of only those portions of the grand jury transcripts that include the legal instructions and related prosecutorial arguments to the grand jurors about their flawed theories of prosecution. *See Douglas Oil Co.*, 441 U.S. at 222. District courts in other jurisdictions have found such narrowly-tailored requests to be proper, even absent the customary demonstration of particularized need. *See United States v. Keller*, No. 89 CR 793, 1990 U.S. Dist. LEXIS 130, at *11 (N.D. Ill. Jan. 5, 1990) ("[D]isclosure of the instructions to the grand jury does not involve the same issues of secrecy as disclosure of other material.... [C]ompelling necessity or particularized need standards ... are not proper standards to apply when the defendant only requests the instructions given to the grand jury."). *Accord United States v. Fuentes*, No. 07-0248, 2008 U.S. Dist. LEXIS 50425 (E.D. Cal. June 24, 2008) ("The Government opposes [the request for the transcript of the grand jury charges] on the grounds that defendants are entitled to the transcript of the instructions and charges to the grand jury.") (citations omitted); *United States v. Diaz*, 236 F.R.D. 470, 477-78 (N.D. Cal. 2006) ("This Court agrees that such instructions do not fall within the bar of Rule 6(e) because their disclosure would not reveal the substance or essence of the grand jury proceedings ... [and] poses no security threat to past, current, or prospective jurors.").

Although courts have been reluctant to release grand jury minutes during ongoing grand jury proceedings, the need to protect the secrecy of the grand jury is greatly reduced in this case, "since

the grand jury has completed its work and returned indictment." *United States v. Mahoney*, 495 F. Supp. 1270, 1276 (E.D. Pa. 1980). The Mahoney court found that:

> [w]hen the grand jury has completed its work, obviously the policy reasons for secrecy are lessened, and in this light the Supreme Court has held that at that time "disclosure is wholly proper where the ends of just require it." Concomitantly the burden on the movant to show a particularized need is also lessened.

*Id*. at 1273 (quoting *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 234 (1940)); *accord United States v. Twersky*, No. S2 92 Cr. 1082, 1994 U.S. Dist. LEXIS 8744, at *15 (S.D.N.Y. June 29, 1994) ("[O]nce an Investigation is over, most of the policies which warrant maintaining the secrecy of the grand jury proceeding . . . are no longer present.") (collecting cases); *In Re Grand Jury Proceedings (DAEWOO)*, 613 F. Supp. 672, 679 (D. Ore. 1985) ("Once the grand jury has concluded its activities, the considerations justifying secrecy become less crucial."). Moreover, the government has already turned over to the defense the transcripts of grand jury testimony provided by some of the witnesses the government intends to call at trial, so the need for secrecy if further diminished.

The Court's ability to review the transcripts first *in camera* also lessons the intrusion into grand jury secrecy. "*In camera* review of grand jury materials 'allows an even more refined assessment of the delicate balance between justice and secrecy and thus a more accurately calibrated determination of whether the [defendant] states a 'particularized need' under *Douglas Oil*.'" *Anilao*, 918 F. Supp. 2d at 182 (citation omitted). *Accord Gonzalez*, 2014 U.S. Dist. LEXIS 58775, at *17. The Court can also further safeguard the grand jury's secrecy through the issuance of a protective order, limiting the use and dissemination of any disclosures. *See, e.g., Horizon of Hope Ministry v. Clark County, Ohio*, 115 F.R.D. 1, 4 (S.D. Ohio 1986) (disclosing grand jury materials with a protective order); *United States v. Kilpatrick*, 570 F. Supp. 505, 518-19 (D. Colo. 1983) (ordering

-13-

that "the entire grand jury transcript dealing with this indictment be made available for study by defense counsel" with specific safeguards imposed).[6]

For the reasons set forth above, it is very likely that the Superseding Indictment was returned based on at least one legally defective theory of "property." In light of this established defect, the Court should either review *in camera* or release the relevant portions of the grand jury transcripts pursuant to Rule 6(e)(3)(E)(ii), including the legal instructions and factual representations by the prosecutors, the evidence of material misrepresentations presented to the grand jury, and evidence of economic loss or harm to the victim's property interests. *See Serubo*, 605 F.2d at 818-19 (remanding so that defendants could examine transcripts of second grand jury proceeding because prosecutor had made misleading and prejudicial comments before another grand jury); *Reyes*, 921 F. Supp. at 190-92 (ordering government to turn over attendance and voting records of grand jury that returned preceding two indictments; further holding that, if attendance and voting records supported defense's claim, court would examine grand jury minutes "in order to determine whether evidence supporting the charges contained in the original and first superseding indictments was in any way presented to the new jurors who voted for the third superseding indictment"); *Twersky*, 1994 U.S. Dist. LEXIS 8744, at *15 (ordering *in camera* review of grand jury minutes based on defendants' contention that grand jury was erroneously instructed regarding law); *United States v. DiBernardo*, 552 F. Supp. 1315, 1325 (S.D. Fla. 1982) (ordering grand jury testimony produced for

---

[6] After reviewing the results of the ordered disclosures, the district court ultimately dismissed the indictment for prosecutorial misconduct and various forms of grand jury abuse. *See United States v. Kilpatrick*, 594 F. Supp. 1324 (D. Colo. 1984). The Tenth Circuit subsequently reversed the dismissal in *United States v. Kilpatrick*, 821 F.2d 1456 (10th Cir. 1987), *aff'd sub nom. Bank of Nova Scotia v. United States*, 487 U.S.250 (1988). However, the Tenth Circuit did not question the district court's earlier published decision concerning the release of grand jury transcripts. Indeed, the opinions by the Tenth Circuit and the Supreme Court reflect that both reviewed the grand jury transcripts in deciding that the district court's remedy was too severe under the circumstances.

-14-

*in camera* inspection after defendants claimed that prejudicial evidence unrelated to charges in indictment was presented to grand jury), *rev'd on other grounds*, 775 F.2d 1470 (11th Cir. 1985); *Mahoney*, 495 F. Supp. at 1275-76 (holding that court would review grand jury minutes *in camera* because prosecution may have relied primarily on summaries of witness testimony in presenting case to second grand jury; further stating that it would release minutes to defense if government failed to show that it acted in good faith).

## CONCLUSION

For all of the foregoing reasons, the Defendants respectfully request that the Court release to the defense or conduct an *in camera* inspection of the minutes of the proceedings before the grand jury that returned the Superseding Indictment against them. The Defendants further request that, following the release or *in camera* review of the grand jury transcripts and any supplemental briefing by the parties with respect to the matters disclosed therein, the Court dismiss Counts 1-29 of the Superseding Indictment on the ground that it was procured in violation of Defendants' Fifth Amendment right to indictment by an independent and informed grand jury.

Respectfully submitted,

| | |
|---|---|
| /s/ Roy Black | /s/Beattie B. Ashmore |
| Roy Black | Beattie B. Ashmore |
| Jackie Perczek | **Beattie B. Ashmore, P.A.** |
| **Black Srebnick Kornspan & Stumpf, P.A.** | 650 E. Washington Street |
| 201 So. Biscayne Blvd., #1300 | Greenville, SC 29601 |
| Miami, FL 33131 | Tele: 864-467-1001 |
| Tele: 305-371-6421 | Fax: 864-672-1406 |
| Fax: 305-358-2006 | beattie@beattieashmore.com |
| rblack@royblack.com | *Attorney for Styx Cuthbertson Trucking* |
| jackiep@royblack.com | *Company, Inc. and John Cuthbertson* |
| *Attorneys for Carl Andrew Boggs, III* | |

-15-

/s/Joseph Preston Strom, Jr.
Joseph Preston Strom, Jr.
**Strom Law Firm, LLC**
2110 N. Beltline Blvd.
Columbia, SC 29204
Tele: 803-252-4800
Fax: 803-252-4801
petestrom@stromlaw.com
*Attorney for Boggs Paving, Inc.*

/s/James Galyean
James Galyean
**Nexsen Pruet, PLLC**
227 W. Trade St., #1550
Charlotte, NC 28202
Tele: 704-338-5358
Fax: 704-805-4735
jgalyean@nexsenpruet.com
*Attorney for Boggs Paving, Inc.*

/s/Christopher C. Fialko
Christopher C. Fialko
**Rudolf, Widenhouse & Fialko**
225 E. Worthington, #200
Charlotte, NC 28203
Tele: 704-333-9945
Fax: 704-335-0224
cfialko@rwf-law.com
*Attorney for Greg Miller*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was electronically filed via CM/ECF, this 14th day of July, 2014.

/s/Roy Black
Roy Black