UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>) **DOCKET NO.** 3:13-cr-204-MOC<br>(1) BOGGS PAVING, INC.; )<br>(2) CARL ANDREW BOGGS, III )<br>   a/k/a Drew Boggs; )<br>(6) STYX CUTHBERTSON TRUCKING )<br>   COMPANY, INC.; and )<br>(7) JOHN CUTHBERTSON )<br>   a/k/a Styx Cutherbertson )<br>_____ ) | |

## UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANTS' JOINT MOTION TO DISMISS SUPERSEDING INDICTMENT

NOW COMES the United States of America, by and through Anne M. Tompkins, United States Attorney for the Western District of North Carolina, who files this, the United States Response in Opposition to Defendants Boggs Paving, Inc.'s ("Boggs Paving's"); Carl Andrew Boggs, III, a/k/a Drew Boggs's ("Drew Boggs's"); Styx Cuthbertson Trucking Company, Inc.'s ("Styx's"); and John Cuthbertson, a/k/a Styx Cuthbertson's ("Cutherbertson's")[1] (collectively the "Joint Defendants'") Motion To Dismiss the Superseding Indictment for Failure to State an Offense (ECF No. 101) (hereinafter "Motion to Dismiss" or "ECF No. 101").

The Motion to Dismiss argues that Counts 1 through 29 of the Superseding Bill of Indictment ("SBI") should be dismissed for failure to state an offense because the offenses charged therein do not "allege that the Defendants failed to perform any *economic* terms of its construction contracts." (ECF No. 101 at 2.) In essence, the Motion to Dismiss is premised on the notion that the Joint Defendants' scheme to defraud the United States Department of

---

[1] Defendant Greg Miller was also a party to the Motion to Dismiss when filed, but has since signed a plea agreement, acceptance of which would waive the relief sought in Motion.

1

Transportation (USDOT) and the North and South Carolina Departments of Transportation (NCDOT) and (SCDOT) in connection with certain road construction contracts by falsely representing that Styx was a legitimate and qualified "Disadvantaged Business Enterprise" (DBE) who would perform certain work on those contracts does not involve a scheme to obtain money or property as required under the mail and wire fraud statutes. (ECF No. 101.)

For the reasons stated herein, the Court should deny the Motion to Dismiss because the Fourth Circuit has held in similar cases that DBE schemes such as those alleged in the SBI do indeed involve money and property—i.e., the money received from the USDOT and its state administrators in payments and profits from construction contracts that the Joint Defendants would not have won except for their false representations that they had satisfied the contracts' DBE requirements. In support thereof, the parties respectfully show the following:

## I. INTRODUCTION

Each of the Joint Defendants are charged in the SBI with committing essentially four offenses in violation of federal laws: (1) conspiracy to defraud the United States and to violate the laws of the United States in violation of 18 U.S.C. § 371 (ECF 67 at ¶¶45-47); (2) using interstate wire transmissions to defraud USDOT, SCDOT and NCDOT in violation of 18 U.S.C. § 1343 (*id*. at ¶¶ 468-49, 52-55); (3) using the mails to defraud USDOT and SCDOT (*id*. at ¶¶ 52-53); and (4) money laundering conspiracy and money laundering concealment in violation of 18 U.S.C. §§ 1956(h) and 1956 (a)(1)(B)(i) (*id.* at ¶¶56-60). Defendants Styx and John Cuthbertson are charged alone in Count 30 with making false statements on a loan application in violation of 18 U.S.C. § 1014. (*Id*. at ¶¶ 61-63). The SBI lays out the allegations against the Joint Defendants in language that tracks the charged statutes and describes in some detail the layered and interconnected scheme employed by the conspirators to defraud the USDOT, SCDOT and NCDOT. Specifically, the SBI alleges with particularity (1) an overarching

2

agreement to accomplish certain illegal acts (¶¶ 22-42); (2) the elements of the criminal statutes (¶¶ 46-47, 49, 51; 53, 55, 57, 60, 61, 63); (3) the times and places during and in which the Joint Defendants participated in the charged offenses (*id.*); (4) the role of each of the Joint Defendants and their conspirators in the charged conspiratorial agreements ( ¶¶ 11-21; 43-44); (5) the manner, means and circumstances giving rise to the alleged scheme, including pertinent laws and regulations of the USDOT, SCDOT and NCDOT relating to the DBE program and the NCDOT Small Business Enterprises (SBE) program (¶¶ 4-10); and (6) overt acts in furtherance of the conspiracy charged in Count One (*id*. at ¶ 47).

Count 1—which incorporates the introductory paragraphs of the SBI by reference—charges a multi-object conspiracy to defraud the United States and violate her laws, as well as overt acts committed by the Joint Defendants and others in furtherance of the conspiracy. (*Id*. at ¶¶ 45-47.) Contrary to the Joint Motion to Dismiss, defrauding other DBEs and defrauding general contractors are not charged as objects of the conspiracy to defraud the United States in Count 1.[2]

The SBI alleges in Counts 2 through 18 that the Joint Defendants and their conspirators used lies, misrepresentations and deceitful conduct as part of their multi-layered scheme to defraud USDOT, SCDOT and NCDOT in connection with specific SCDOT and NCDOT contracts that required DBE participation. In Counts 2 through 18, the SBI alleges that the Joint Defendants sent specific bid proposals and DBE quarterly reports to SCDOT as the means of

---

[2] While the introduction to the SBI does allege that the Joint Defendants unfairly deprived legitimate DBEs and general contractors of a fair opportunity to win contracts that Boggs Paving and Styx won through fraud, the charging language in each of the counts of the SBI clearly allege that a scheme to defraud and to obtain money—i.e., payments and profits from lucrative DBE contracts with SCDOT and NCDOT, funded by USDOT. *See* ECF No. 67 at ¶ 3.

3

executing their scheme through interstate wire transmission or the U.S. mails. (ECF No. 67 at ¶¶ 49, 51, 53.)[3]

Each of the these counts in the SBI charges a scheme to defraud and/or a scheme to obtain money and property by means of false and fraudulent pretenses, representations and promises—i.e. falsely representing that required work would be or had been done by and that required payments would be or had been made to Styx, a DBE, in order to qualify Boggs Paving for contracts it would not otherwise receive if it had truthfully represented who would be doing the work required by the contract. (*Id*. at 49, 51, 53, and 55.)

Finally, Counts 21 through 29 allege that the Joint Defendants conspired and/or aided and abetted money laundering by using a nominee bank account in Styx's name, maintained by Boggs Paving employees, to funnel payments from the fraudulently obtained contracts—consisting of federal and state funds—from Boggs Paving to Styx and then back out to another Boggs Group company in order to conceal the central and controlling reason for the fraudulent schemes—i.e. Boggs Paving was in fact receiving federal and state money purportedly due to Styx. (*Id.* at ¶ 50).

## II. COUNTS 1 THROUGH 29 ARE LEGALLY SUFFICIENT

### A. The Legal Standard Applicable to a Motion to Dismiss

The Supreme Court has long held that an indictment is sufficient if it "'contains the elements of the offense intended to be charged, 'and sufficiently apprises the defendant of what he must be prepared to meet.'" *United States v. Hooker*, 841 F.2d 1225, 1227 (4th Cir. 1988) (quoting *Russell v. United States*, 369 U.S. 749 (1962)). Accordingly, "[t]he Fourth Circuit's test

---

[3] In Counts 19 through 20, do not involve DBE fraud. These counts relate to Boggs Paving's use of Styx's name to fraudulently obtain two NCDOT contracts reserved for small business enterprises (SBEs) by North Carolina. (*Id*. at 55.)

4

for sufficiency is whether the indictment sets forth the essential elements of the offense and sufficiently apprises [a defendant] of the charge so that [the defendant] may be able to prepare a defense and plead a former conviction or acquittal in the event of a subsequent charge for a similar offense." *United States v. Izuogu*, No. 90-5778, 1991 WL 21653, at *3 (4th Cir. 1991).

Sufficiency of the evidence is not to be conflated with sufficiency of the indictment. *See United States v. Ring*, 628 F. Supp. 2d 195, 223 (D.D.C. 2009). "On a motion to dismiss an indictment, the question is not whether the government has presented sufficient evidence to support the charge, but solely whether the allegations in the indictment, if true, are sufficient to establish a violation of the charged offense. For the most part, this does not involve any examination of the evidence." *See United States v. Todd*, 446 F.3d 1062, 1068 (10th Cir. 2006) (internal citations omitted).

### B. The Object of the DBE Fraud Alleged in the SBI is to Obtain Money.

Contrary to the Joint Motion to Dismiss, the primary object of DBE fraud in general, and the *Boggs Paving et al.* scheme in particular, is to obtain money from contracts funded by federal and state grants through material misrepresentations. *See United States v. Bunn*, 26 Fed. Appx. 139 (4th Cir. 2001)(unpublished). Indeed, the Fourth Circuit has consistently upheld convictions for DBE fraud similar to that alleged in the SBI. *See e.g., United States v. Brothers Construction Co. et al.*, 219 F.3d 300, 317 (4th Cir. 2000)(rejecting defense argument that there was no economic loss in a DBE case for purposes of calculating the applicable Federal Sentencing Guidelines).

*Bunn* is factually similar to the instant case. *Bunn*, 26 Fed. Appx. at 140. Kenneth Bunn was the president of a non-DBE construction company who recruited DBEs to serve as "fronts" on bids for highway construction products in West Virginia. *Id.* at 141. Charles Striblin owned a DBE used by Bunn to circumvent federal and state DBE requirements. *Id.* Bunn and Striblin

5

were both convicted of conspiracy to commit mail and wire fraud and substantive counts of wire and mail fraud. *Id.* On appeal, they disputed the sufficiency of the third essential element of the wire fraud statute—i.e., that the charged scheme was intended to deprive a victim of money or property by lying about Striblin's participation in DBE contracts. *Id.* at 142. The *Bunn* defendants argued, like Joint Defendants in this case, that because 18 U.S.C. § 1343 is limited to protecting property rights, the evidence at trial must establish that they caused an economic loss to an "identifiable victim." *Cf*, Motion to Dismiss at 2, 21-28 (discussing various "right to control" cases). Also like the Joint Defendants in the instant case, Bunn and Striblin argued that there could be no identifiable victim of their DBE scheme because the government obtained the benefit of its bargain in the sense that the construction work promised in the contract was actually performed—albeit not by Striblin, the DBE in that case. *Id.* Thus, according to Bunn and Striblin, the West Virginia Department of Highways suffered no loss other than a deprivation of the "aspirational goal" of obtaining a certain level of DBE participation. *Id.* By the defendants' logic, since the goal of encouraging a certain level of DBE participation is not a property right, the Government failed to establish all of the elements of a wire fraud. *Id*.

The Fourth Circuit quickly rejected this argument in an unpublished opinion which simply noted that "the property interest at stake is not the goal of DBE participation, but rather the actual dollars used for the highway construction." *Id.* Moreover, the Fourth Circuit held that it is no defense to wire fraud that the highway department did not suffer a financial loss, because financial loss is not an element of wire fraud. *Id*. (citing *United States v. Adler*, 186 F.3d 574, 576 (4th Cir. 1999)). The evidence need only establish that a defendant obtained money to which he was otherwise not entitled by falsely representing that subcontract work would be performed by DBEs. *Id*. at 142-43.

The SBI in the instant case plainly states that the Joint Defendants and their conspirators "fraudulently obtained tens of millions of dollars in constructions contracts . . . by fraudulently certifying that required payments had been made to . . . a DBE." (ECF No. 67 at ¶ 1). Each of the wire and mail fraud counts alleges that the Joint Defendants falsely certified that Styx, and not Boggs, performed services or would perform services on certain contract in return for certain amounts of money. The money laundering counts allege that the Joint Defendants and their conspirators used a nominee account in the name of Styx to conceal the nature and source of the money that generally was eventually paid to a Boggs company, not to Styx.

The argument in the Motion to Dismiss that the Joint Defendants' DBE fraud was not about money is based on a selective reading of the SBI which takes one phrase out of context—i.e. that the DBE fraud in this case "deprived USDOT, NCDOT, and SCDOT of controlling how their money should be spent; deprived legitimate DBEs of the profits from subcontracts that were designated for their benefit; and deprived other general contractors from obtaining the profits from lucrative NCDOT and SCDOT contracts." ECF No. 67 at ¶ 3. By parsing this phrase from its context, the Motion to Dismiss constructs the theory that the SBI alleges "four distinct victims" and "five separate theories of prosecution." ECF No. 101. In doing so the Motion to Dismiss completely ignores that the quoted phrase is a subordinate clause in a sentence that begins: "As a result of its fraudulent and deceptive conduct, BOGGS PAVING obtained profits from lucrative NCDOT and SCDOT contracts that it was not entitled to receive and thereby unjustly enriched itself …. " ECF 67 at ¶ 3. Moreover, the subordinate clause selectively quoted by the Motion to Dismiss appears only once in the introductory paragraphs of the SBI and is not repeated in the charging language of any of the counts. Any fair reading of the quoted (or misquoted) phrase in the context of the SBI shows that its clear meaning is that "other DBE's and contractors" are collateral victims of a DBE fraud scheme whose main and sole goal is to

7

obtain money and profits for Boggs Paving. As the SBI plainly states when describing the "Fraud Scheme:

> Defendants BOGGS PAVING, DREW BOGGS, HICKS, MILLER, TUCKER, MANN, and CUTHBERTSON used STYX as a "pass through" entity to obtain the appearance of the required DBE participation and required payments to a DBE entity when, in reality, the majority of the funds that were represented as having been paid to STYX were actually paid to BOGGS GROUP or other non-DBE firms and the majority of the work that was represented as having been done by STYX was actually done by the BOGGS GROUP or another non-DBE firm.

*Id*. at ¶ 22.

> As a result of the defendants and their co-conspirators' fraudulent and deceptive conduct, USDOT, NCDOT, and SCDOT were deceived into awarding contracts to BOGGS PAVING, were deceived into paying BOGGS PAVING for projects that required DBE participation, and were deceived into crediting payments purportedly to STYX toward DBE participation goals when such payments were improper and such expenditures were not eligible for DBE credit under the DBE regulations . . .

*Id*. at ¶ 31.

Other Federal Circuit Courts have also rejected the Joint Defendants' argument that lying about DBE qualifications to obtain government contracts does not involve money. *See United States v. Leahy,* 464 F.3d 773 (7th Cir. 2006), *United States v. Tulio*, 263 Fed.Appx. 258, 262 (3d Cir. 2008) (unpublished). In *Leahy*, the Seventh Circuit held that the defendants' performance on all other aspects of the contract is irrelevant to the elements of DBE fraud. *Leahy*, 464 F.3d at 793-94 ("performing the contract adequately did not provide the consideration for which the City of Chicago bargained: it did not support the proper minority or women businesses.") In *Tulio*, the Third Circuit held that the object of the alleged DBE fraud in that case was money (a traditionally recognized property right) and that the defendant's requisite criminal intention was to induce the government to pay for a service that it did not receive—i.e., a certain amount of work done by a DBE.

8

Thus, the Motion to Dismiss constructs a bogus argument based on a selective reading of the SBI. While it is true that the Joint Defendants' DBE fraud deprived federal and state governments of their right to spend taxpayer money as Congress and the states intended and that other DBEs and general contractors who followed the rules were cheated, the Joint defendants are only charged with lying to obtain money. The evidence at trial will show that the Joint Defendants—particularly Boggs Paving—was motivated by money and lied to obtain more profits than they would have gained if they had honestly fulfilled the DBE requirements of the contracts they signed. As clearly stated in the very first sentence of the SBI, the object of the defendants' scheme was money—i.e., "tens of millions of dollars." The argument in the Motion to Dismiss concerning "other DBEs and general contractors" is nothing more than a red herring designed to distract from the clear charging language in each of the SBI's Counts. Indeed, the Court could strike the SBI's references to "other DBEs and general contractors" and it would still properly allege mail and wire fraud offenses.

For these reasons, the Joint Defendants Motion to Dismiss the wire and mail fraud and money laundering counts in the SBI should be denied. [4]

### C. Count One Alleges a Conspiracy to Defraud the United States.

Ignoring the clear Fourth Circuit authority cited above, the Joint Defendants also attempt to persuade the Court that the SBI does not allege a scheme to defraud the United States because the federal highway funds at issue in this case are administered through the SCDOT and the NCDOT. *See* Motion to Dismiss at 28 – 31. The Joint Defendants' attack on Count 1 of the SBI is based entirely on inapposite Eleventh Circuit law construing federal jurisdiction for false

---

[4] Since they are of no consequence, the Government has not addressed the Joint Defendants' arguments concerning the Government's "right to control" how its money is spent or that "other DBE's and general contractors" cannot be victims of a wire or mail fraud. As shown above, the SBI does not allege these theories of prosecution. However, the Government requests an opportunity to explain its position further if the Court finds it necessary.

9

statements under 18 U.S.C. § 1001, particularly *United States v. Blankenship,* 382 F.3d. 1110 (11th Cir. 2004). In *Blankenship*, a panel of the Eleventh Circuit held that false statements concerning DBE participation made by contractors to obtain Florida DOT contracts did not fall "within the jurisdiction of the United States"—an element of 18 U.S.C. § 1001. First, the court in *Blankenship* not only dealt with an entirely different statute from those charged in the instant case, it affirmed the defendants' convictions for conspiring to defraud the United States in violation of 18 U.S.C. § 371. *Blankenship*, 382 F.3d at 1118-19.[5] Second, the Fourth Circuit has distinguished if not repudiated the Eleventh Circuit's holding in *Blankenship*. *See United States v. Jackson*, 608 F.3d 193, 198 (4th Cir. 2010).

*Jackson* involved a defendant who submitted false timesheets to his employer under a National Security Agency (NSA) contract. *Id.* at 195. Jackson was charged with violations of 18 U.S.C. § 1001 in an indictment that he moved to dismiss on the grounds that his submission of inaccurate timesheets to his employer, which was a sub-contractor to a general contractor to a United States agency, were not statements "within the jurisdiction of any department or agency of the United States." *Id*. The district court denied the motion and Jackson entered a guilty plea conditioned upon Fourth Circuit review of this issue. *Id*. The Fourth Circuit found that Congress intended the phrase "within the jurisdiction" of the United States to be broadly construed and—citing a majority of federal circuits on this issue—held that federal jurisdiction includes the power to safeguard federal funds. *Id*. at 197-98 (citations omitted). Moreover, the Fourth Circuit expressly disregarded the defendant's reliance on *Blankenship* and other cases narrowly construing the scope of federal jurisdiction under 18 U.S.C. § 1001. One distinction noted by the Fourth Circuit was that the defendant in Jackson held a security clearance granted

---

[5] The defendants in *Blankenship* did not challenge and the Eleventh Circuit did not address their convictions on Count 2, which count alleged a conspiracy to defraud the United States in connection with DBE construction contracts. *Id.*

10

by the NSA that enabled him to perform work for his employer. *Id.* at 199. Likewise, in the present case, as the Joint Defendants well know and fear, the USDOT has the authority to bar contractors who violate DBE contract terms from participating in future state highway contracts using federal funds.

For these reason, the Joint Defendants challenge to Count One should be denied.

## III. CONCLUSION

The SBI is predicated on the Joint Defendants' primary and sole motive—greed. It alleges a DBE scheme designed to maximize Boggs Paving's profits from SCDOT and NCDOT highway contracts funded with federal dollars by misrepresenting the work that would be done by Styx. The arguments raised in the Motions to Dismiss are based on a misreading of the SBI and have been squarely rejected by the Fourth Circuit. For these reasons the Motion to Dismiss should be denied in its entirety.

RESPECTFULLY SUBMITTED this, the 4th day of August, 2014.

ANNE M. TOMPKINS, UNITED STATES ATTORNEY

Michael E. Savage
Assistant United States Attorney
North Carolina Bar Number 33159
227 West Trade Street, Suite 1650
Charlotte, North Carolina 28211
704/338-3166 (Direct Line)
704/227-0197 (Fax)
mike.savage2@usdoj.gov

Jenny Grus Sugar
Assistant United States Attorney
227 W. Trade Street, Suite 1650
Charlotte, NC 28202
704-344-6222
704-344-6629 (fax)
jenny.sugar@usdoj.gov

# CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of August, 2014, this document was Motion was duly served upon the defendants herein by electronic notification using ECF to defendants' attorneys of record

        ANNE M. TOMPKINS
        UNITED STATES ATTORNEY


        //s// *Michael E. Savage*
        Michael E. Savage
        Assistant U.S. Attorney