UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| (1) BOGGS PAVING, INC., | ) | DOCKET NO.: 3:13-cr-204-MOC |
| | ) | |
| (2) CARL ANDREW BOGGS, III | ) | |
| a/k/a Drew Boggs, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**OBJECTION TO BILL OF PARTICULARS FOR FORFEITURE OF PROPERTY**

Defendants Boggs Paving, Inc. ("BPI") and Drew Boggs, through the undersigned counsel, object to the Bill of Particulars for Forfeiture of Property filed by the United States on September 24, 2012 (Doc. No. 154), and request that the Court order the United States to release the lis pendens it wrongfully recorded on Mr. Boggs' family home.

**Summary of Objection**

While negotiating the plea of Drew Boggs, counsel for the United States assured counsel for Mr. Boggs that the United States had no interest in seeking forfeiture of his assets and that it would take no position on forfeiture at sentencing. With this assurance, after significant negotiations, Mr. Boggs pled guilty to counts 1 and 21 of the Superseding Indictment.[1] Now, without prior notice or explanation, the United States has filed a Bill of Particulars seeking $1.5 million and forfeiture of Mr. Boggs' family home, where he resides with his wife and daughters.

---

[1] This assurance by the government was not reduced to writing and made part of the plea agreement. Undersigned counsel has heretofore been comfortable relying on representations from government counsel.

The government's Bill of Particulars is another gross overreach in this case. The United States has informed counsel for Mr. Boggs and BPI that it bases its request on the theory that a portion of the proceeds of the sale of a quarry and sand mine owned by non-defendant entities[2] were used to pay a portion of the mortgage on Mr. Boggs' family home. How these sales justify the government's reversal of its stated position regarding forfeiture is a mystery. Details of the sale and use of the transactions' proceeds establish the baselessness of the government's Bill of Particulars. The proceeds were obtained from the sale of companies that are not defendants in this action, and they are not subject to forfeiture under the governing law. For the reasons set forth below, Mr. Boggs and BPI object to the Bill of Particulars and request immediate release of the lis pendens on Mr. Boggs' family home.

## Statement of Facts

The Lynches River Quarry in Jefferson, South Carolina, is owned by Buckhorn Materials, LLC ("Buckhorn"). Until June 2014, Buckhorn was owned by a joint venture comprised of two partners: A Mining Group, LLC ("A Mining Group"), a Florida company that owned 50% of the quarry, and Boggs Materials, Inc. ("Boggs Materials"), a North Carolina company that owned the other 50%. Boggs Materials is not a defendant in this action or any criminal proceeding.[3] Separately, until June 2014, Black Creek Sand Mine in Mt. Croghan, South Carolina was owned by Construction Materials Group, LLC ("CMG"). CMG was owned by three individuals, each owning a 1/3 share. Drew Boggs was one of the three individuals with a 1/3 share. Neither of the other two individuals who owned CMG is a defendant in this case, nor is CMG a defendant in this action or any criminal proceeding. CMG is no longer a company.

---

[2] As explained more fully below, Mr. Boggs owned partial interests in some of the non-defendant entities.

[3] Boggs Materials is 50% owned by Drew Boggs and 50% owned by Chris Boggs, a non-defendant in this case.

2

### *Caterpillar Requires a Principal Reduction*

In early 2014, while BPI and its employees continued to experience the financial fallout of the indictment in this matter, the Boggs companies' loan with Caterpillar Financial Services ("Caterpillar") on asphalt plant equipment needed to be renewed. Boggs Materials owns the asphalt plants,[4] so the loan reduction needed to be made by Boggs Materials. As a condition of renewing the loan, Caterpillar required a substantial principal reduction payment toward the plant equipment. Without this large principal reduction, Caterpillar would call the notes and effectively put Boggs Materials, and the asphalt plants it operates, out of business. Crippled by the inability to deliver asphalt to projects, BPI's operations would have come to a halt. This scenario would have eliminated the jobs of hundreds of employees of the Boggs companies.

Faced with this dilemma and inadequate cash on hand to meet the demand, Boggs Materials was forced to generate enough capital to stay afloat and keep its asphalt plants in operation. Eventually, Boggs Materials and A Mining Group agreed that they would sell Buckhorn and its quarry so Boggs Materials could use its share of the sale proceeds to pay down the principal on the Caterpillar notes.

### *The Sale of the Lynches River Quarry and Black Creek Sand Mine*

A potential buyer, Summit Materials ("Summit"), sought to purchase both the Lynches River Quarry and the Black Creek Sand Mine. As a result, the joint venture partners agreed to sell Buckhorn and the quarry to Summit, and CMG's owners agreed to sell CMG and the sand mine to Summit as a part of the same sale. The sale closed on June 9, 2014. From this sale, Boggs Materials received a share of the proceeds based on its 50% ownership interest in

---

[4] There are three entities owned equally by Drew Boggs and his brother Chris Boggs: BPI, Boggs Materials, and Boggs Transport, Inc. Only BPI is a defendant in this case. None of the Boggs companies was a parent or owner of CMG, which was merely an affiliate partner of the Boggs companies.

3

Case 3:13-cr-00204-MOC   Document 156   Filed 10/07/14   Page 3 of 8

Buckhorn.[5] Drew Boggs received a share of the proceeds based on his 1/3 ownership interest in CMG.

### *The Sale Proceeds Were Used to Pay Boggs Materials' Company Debt and Drew Boggs' Personal Debt*

Boggs Materials received net proceeds from the sale of Buckhorn and its quarry. From these proceeds, the balance owed to Wells Fargo Equipment Finance for the quarry equipment that was sold with the quarry was paid; other proceeds went to Buckhorn for past-due payables owed to the joint venture; and additional proceeds were paid to Caterpillar Financial Services for the required principal reduction on the note for Boggs Materials' asphalt plant equipment. After these payments were made, Boggs Materials retained the balance of the proceeds from the sale. It then received a true up payment from Summit after all payables and receivables had been satisfied. This money was used to bring accounts payable more current and reserve for income taxes due from the transaction.

As part owner of CMG, Drew Boggs received net proceeds from the sale of that company and its sand mine. CMG was not a Boggs company and is not a defendant in this action. Thus Mr. Boggs received no money from BPI, the corporate defendant in this action, as a result of the sand mine sale. From these proceeds, he made payments to reduce the principal owed on his home, leaving some cash from the sale. Mr. Boggs then received a true up payment from Summit after all payables and receivables had been satisfied. Thus, after the sand mine was sold, Mr. Boggs was left with some funds from the sale and subsequent dissolution of CMG, which he reserved for personal income taxes due from the transaction.

---

[5] The terms of the sales are confidential pursuant to the sales agreements. Details can be made available to the Court *in camera* if requested.

4

Case 3:13-cr-00204-MOC   Document 156   Filed 10/07/14   Page 4 of 8

## Legal Argument

### I. The proceeds from the quarry and sand mine sale are not subject to forfeiture

The proceeds received by Boggs Materials and Drew Boggs from the quarry and sand mine sale are not subject to forfeiture. The Unites States sought forfeiture of property pursuant to 18 U.S.C. § 982 in the Superseding Indictment. Section 982 sets forth in pertinent part:

> (a)
> (1) The court, in imposing sentence on a person convicted of an offense in violation of section 1956 . . . of this title, shall order that the person forfeit to the United States <u>any property, real or personal, involved in such offense, or any property traceable to such property</u>.
>
> (2) The court, in imposing sentence on a person convicted of a violation of, or a conspiracy to violate . . . section . . . 1341 [or] 1343 . . . of this title . . . shall order that the person forfeit to the United States <u>any property constituting, or derived from, proceeds the person obtained directly or indirectly, as the result of such violation.</u>

18 U.S.C. §982(a)(1), (a)(2)(A). The two counts to which Mr. Boggs pled guilty are Count 1 for conspiracy to violate 18 U.S.C. § 1341 and 1343 in violation of 18 U.S.C. § 371; and Count 21 for money laundering conspiracy pursuant to 18 U.S.C. § 1956(h). Therefore, the property at issue is not subject to forfeiture unless it was "involved in the offense" or "traceable to such property," or unless it "constitut[es] or deriv[es] from proceeds the defendants obtained directly or indirectly, as the result of such violation."

#### A. The quarry and the proceeds from its sale are not subject to § 982

Buckhorn, which owns the quarry, is not a defendant in this action. Nor is Boggs Materials, which was a 50% owner of Buckhorn before the entity was sold to Summit. Moreover, the proceeds these third parties received from the sale of Buckhorn and the quarry are not traceable to property that was involved in the offenses, and they do not derive from proceeds that the defendants in this action, Drew Boggs and BPI, obtained as a result of the violations to

which they have pled guilty.  The value of the quarry does not come from any of the offenses charged in this action.  Rather, the quarry's value was generated solely by Buckhorn's years of work blasting and extracting rock from the ground at that site.  When Buckhorn and its quarry were sold to Summit, Boggs Materials and A Mining received compensation for this value that they created as joint-venture partners.  Boggs Materials then simply received its share of the sale proceeds based on its 50% interest in the Buckhorn joint venture.  These proceeds do not derive from the criminal activity described in the indictment.

The United States' request for forfeiture of funds under § 982 resulting from the sale of Buckhorn and the quarry is improper and legally indefensible.

### B.   The sand mine and the proceeds from its sale are not subject to § 982

CMG, which owned the sand mine, is not a defendant in this action.  Drew Boggs owned a 1/3 share of CMG, but the Superseding Indictment does not allege illegal activity on the part of CMG.  Thus, the United States is attempting to seize from Mr. Boggs property that derives from activity outside the allegations of the Superseding Indictment.  The proceeds CMG's owners received from the sale of CMG and its sand mine are not traceable to property that was involved in the offenses, and they do not derive from proceeds that the defendants in this action, Drew Boggs and BPI, obtained as a result of the violations to which they have pled guilty.

Therefore, the United States' request for forfeiture of funds under § 982 resulting from the sale of CMG and the sand mine is also improper and legally indefensible.

### Conclusion

For the foregoing reasons, the Court should disregard the Bill of Particulars and deny any request for forfeiture of the referenced property at sentencing.  In addition, the Court should

order that the United States release the lis pendens it wrongfully recorded against Mr. Boggs' family home.


Dated: October 7, 2014.                    Respectfully submitted,

                                           s/ Kenneth D. Bell
                                           Kenneth D. Bell, N.C. Bar No. 10800
                                           Matthew E. Orso, N.C. Bar No. 42409
                                           McGuireWoods, LLP
                                           201 N. Tryon St., Suite 3000
                                           Charlotte, NC 28202
                                           Telephone: (704) 343-2000
                                           Facsimile: (704) 343-2300

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of October, 2014, this document was duly served upon the United States by electronic notification using ECF to serve its attorneys of record.

Dated: October 7, 2014

                                                      s/ Kenneth D. Bell